The next case on the calendar is Henri Johns-Manville Corporation. Good morning, Your Honors. May it please the Court, my name is Mitchell Auslander from the firm of Wilkie, Farr & Gallagher, Counsel for Marsh, USA. I would like to start with the due process argument. We have two, the standing argument and the due process argument. But I'd like to start with the due process argument because we believe that Judge Rakoff's decision below casts doubt on the scope of a future claims representative's duties and responsibilities in any bankruptcy proceeding. Why would you start with the due process argument when you're claiming that the district courts in both cases I mean, you can do whatever you want, but you're claiming that they did not have jurisdiction based on a combination of lack of standing and the notice of appeal. That's correct. On the bankruptcy court orders. And the reason for it is we think the due process argument is very substantial and we would encourage the Court to reach it even if it concludes that there was no standing, that the Bogdan Law Firm had no standing to bring the appeal. This is an issue, the due process question in the bankruptcy context, particularly with respect to Johns-Manville, has been litigated, as you know, up and down the courts to the Supreme Court and back. And we think that this might be an opportunity to deal with it once and for all finally. If we agreed with the standing and jurisdictional issue, could we get to the due process issue? Yes, I think you can, Your Honor. We would cite Lee against the Board of Governors. You can reach it. And given the importance of it in this case, obviously we would encourage you to reach it. Judge Rakoff held that the future claims representative did not adequately represent the future claimants because the future claims representative did not believe the bankruptcy court had jurisdiction. We say that whether or not the future claims representative believed that the bankruptcy court had jurisdiction is irrelevant. The Supreme Court in the Bailey case held that on its face the injunction covered in personam claims. The future claims representative had obviously had the text of the injunction and he had an opportunity to object to it given his powers as a committee in the bankruptcy court. But he didn't. He didn't object to it, even though it on its face covered in personam claims. Instead, he actually supported the whole confirmation order, which included the injunction. He supported it at the bankruptcy court level. And then even on direct appeal in Kain against Manville, he supported it there, even though there were objectors who said that the future claimants were not given, did not have, the court did not have jurisdiction over claims that they might assert in the future. Now, it's actually unnecessary, we believe, for you to determine as a factual matter, as the bankruptcy court did, subject to clearly him behaving, she, Judge Morris, being clearly erroneous in her findings. But the findings that she did make, we believe, clearly show that the future claims representative did, in fact, understand that the injunction covered in personam claims. So your argument is that those findings were not clearly erroneous, but we wouldn't even need those findings? That's correct. Because the injunction itself was clear on its face, so said the Supreme Court in Bailey. So in a sense, this is an alternative argument that Judge Rakoff dealt with, we think, inappropriately, with due respect. But you don't necessarily have to decide whether the bankruptcy court findings were clearly erroneous. But they said a lot. The findings said a lot. Judge Lifland, who handled the Manville bankruptcy for many years, stated at the confirmation hearing that the future claims representative was, quote, active in the Manville reorganization for over two years, and, quote, the catalyst for, if not the architect of the plan. From the future claims representative's own pleading and mouth, he submitted a memorandum on legal issues in the bankruptcy court proceeding and said, thus we consider it appropriate that the court, that is the bankruptcy court, find that it has in rem jurisdiction over the policies and that the injunction and channeling order requested is in rem. He plainly was aware that there was an argument that the claims that would be barred for the future claimants would be in persona. And, in fact, he doubled down in the hearing, trying to do the best job that he could for his clients, I assume, and said that the injunction was one of the subjects, quote, of most discussion. And he repeated the argument that the proposed injunction only serves to enjoin claims against the race. There were additional objections pointed to by Judge Morris in the bankruptcy court in her findings, which showed that the issue of whether impersonum claims were covered by the injunction was very much a live question. So all of this is out there, and in the face of what the future claims representative said and the other objectors said, the bankruptcy court, Judge Lifland, did not modify the order, the injunction to exclude impersonum claims. He understood his case, he understood what the issues were that were before him, and he made the decision not to modify the order. Therefore, everybody knew that impersonum claims were included in the injunction, whether or not anybody personally believed that the bankruptcy court did not have jurisdiction to do that. Certainly with respect to my client, Marsh, it was actually a slightly different injunction that was entered in connection with the Manville bankruptcy proceedings. In the case of Marsh, the injunction covered services performed by Marsh. Marsh was an insurance broker. It was not an insurance company. So all the claims were impersonum. And the future claims representative had to have known that. Mr. Parra does not have any interest in the appeal, no personal interest in the appeal, and therefore has no standing. Mr. Parra himself. Yes, I think that's correct. They are relying on Judge Rakoff's having said that this was merely a captioning error, that Mr. Parra did not himself take an appeal, did not file an appeal. But they also concede in their briefs, as they had to, and also in their oral argument that they never discussed the appeal with Mr. Parra or his estate. And so it can't be the case that it was a captioning error. They didn't talk to him about it. What is the decretal effect of that, if we were to agree with you? You'd conclude that there was no standing, that this party, the Bogdan Law Firm, has no standing to have even brought the case in the district court. It had no standing to appeal the bankruptcy court order to the district courts, and the district courts, neither Judge Shindlin nor Judge Rakoff, had jurisdiction to review the bankruptcy court order. Is that? That's exactly it, Your Honor. Could you just briefly address the notice issue, which Judge Rakoff didn't reach, if we were to agree with your principal argument? Well, the notice that was provided in the case of Johns Manville was probably the greatest amount of notice that had ever been given, certainly by that point in time, to all of the potential asbestos claimants and the world. I don't think that there's any fair argument that it wasn't as broad as it could possibly be. The argument that, as I understand, the appellees are making is that their client couldn't have gotten notice because the future claims representative did not represent them with respect to the in personam claims. And I've already explained why he did represent them in connection with the claims. But in any event, the duties and obligations, as I indicated in the beginning, which are so important to bankruptcy proceedings involving asbestos and other cases where there is a need for a future claims representative, there isn't any question that this future claims representative and all of them had authority on behalf of their clients. That's why they are there. Thank you, Your Honor. Good morning, Your Honors. May it please the Court. My name is Todd Duffy from the firm of Duffy Amadeo, LLP, and I represent the Bogdan Law Firm as counsel to Salvador Parra, Jr. So as my colleague mentioned, there are two issues, and so I will deal with the standing issue first. The issue of standing comes down to whether or not it is objectively clear that Mr. Parra was the one who filed the notice of appeal, and that would be found under Rule 3 of this Court's rules. The question, the only person, as Marsh admits in their brief over and over and over again, is whether or not Mr. Parra — it's evident and objectively clear that Mr. Parra was the appellant, and it is. Not only — Marsh has said through each appeal that the Bogdan Law Firm has no standing that they're not an agreed party. And so not only did they say that in every brief, but the court — two district courts' opinions have said that, and the bankruptcy court opinion has said that. It doesn't seem to me that under the Guckenberger case that this Court would — doesn't seem to me under the Guckenberger case. Let me ask you two questions. First, you appear to concede in your brief that the Bogdan Law Firm does not itself have standing. Is that correct? That's correct, Your Honor. Okay. Second, the notices of appeal in the record refer or identify the appellant entirely by reference to the Bogdan Law Firm. This is as counsel for Salvador Parra, but it doesn't say that Salvador Parra Jr. is an appellant. Is that correct? It does say as counsel, Your Honor. Is that your question, Your Honor? That's my question. Yes, Your Honor. It does say that. There's no other notice of appeal in this record that says either alone or in addition to the Bogdan Law Firm that Salvador Parra is the appellant. Is that correct? That's correct. There is no other notice of appeal that says that. And is it also correct, as I understand it, that you were unable to — at some point, you, meaning the law firm, was unable to fine Mr. Parra or get his estate, I guess his wife, to say that they wanted a notice of appeal filed? Well, Your Honor, our position is that it was unnecessary to do that. No, I understand that, but I'm asking you a different question. Is that correct? I believe that for a short period of time, yes, Your Honor, at the time of the filing, that we were unable to reach Mr. Parra's wife or widow. And in the ordinary course, wouldn't you need the acquiescence of the person appealing? I think you would if the engagement letter didn't allow for and bind successors and heirs specifically with that language. I would think, yes, Your Honor, of course, but that's not what this situation is. The engagement letter itself allows for the attorney to take appeals, and it binds not only Mr. Parra, but Mr. Parra's successors and heirs. So therefore, the Bogdan Law Firm believed it had authority, and actually, I specifically state that on the record, that there was authority and that they believed that they had authority as a result. Did the engagement letter authorize the taking of an appeal without consultation with the client? It allows the taking of appeals. It does not specifically say whether or not there should be consultation with clients or not with consultations, but Judge Rakoff specifically asked for affidavits during the hearings, and the affidavit specifically said that she believed that he was representing her at all times, and that every action that she had taken was agreed upon, that she only anticipated that she would do whatever was necessary to protect the client, and that's exactly what he did. Mr. Parra's wife? Widow. Widow. Widow. That's correct. There's two affidavits that Judge Rakoff had asked for, and we were able to submit both of those. Could you move on and address the, with my colleagues leave, and address the merits of the FCR representation? Because as I understand your adversary, the district court said that there was an adequate representation here because the FCR didn't understand himself to be representing these future claimants as to the in personam suit, but your adversary says that's just wrong. There was discussion about the possibility that this language reached in personam suits. There was back and forth, and the language stayed the same. So whether we view this as a factual finding or just as a matter of law, the FCR knew what he was doing. Well, Your Honor, what Judge Rakoff says is that that's not exactly the case. That what the FCR was doing was stating the position of all the parties. And so it's not that he was saying I'm arguing these, and Judge Rakoff, by evidence, says. He didn't assert any other positions. He just simply said this is what all of the parties are thinking, and not only did he do that in oral argument, but he did that in a joint letter and represented at that oral argument that there would be a joint letter forthcoming from all of the parties, one of whom was travelers and insurer. And they did produce that, and when the order was originally entered, I think, in 1985, Judge Liflin incorporated that letter by reference and included that. The letter itself was meant to amend the agreement between the insurers and the various claimants. So he relied on the following documents and the following representations. So this Court, after Bailey, my colleague referenced Bailey, which never really reached this due process argument. And while they agreed that certain claims would not, but it did not state that if due process were challenged, that it was going to rule one way or the other. It was actually sent down here. It was Chubb was the claimant, and following the notice of settlement, various parties objected to the overbroad language and that the language went beyond the jurisdiction. The Court, this Court held that the Court had in rem jurisdictions over the policies and the power to enter appropriate orders to protect that jurisdiction, and that the channeling order was only intended to restrain claims against the race. And this is part of that letter that was incorporated by reference. And that, so that although March states and relies upon this kind of evidence that Judge Rakoff relied upon, it's relying on it for the idea that these were arguments that were put forth in front of Judge Lifland, and then those arguments were either ignored or not, or denied, and that's not the case. This is a representation that there was actually a consensus. And it's consistent with the known context at the time of the orders. But to go back to the point here, these types of litigations that the Bogdan law firm or that Mr. Power is attempting to bring in Mississippi, they never were in anybody's minds for at least 10 years after the orders were entered. And so there's no evidence here that seems to say that anybody was even contemplating these types of claims in 1985 or 1984 when the orders were actually entered by Judge Lifland. I wanted to make one other comment with respect to standing, if I may. No one is saying that objectively, it's objectively clear that Mr. Bogdan's law firm is the plaintiff here. By the text of the orders, it seems objectively clear now standing here and in retrospect to everybody that it was Mr. Power who was the party to this because he's the only agreed party to that order. The notice said as counsel. And it did say as counsel, yes, Your Honor. So, Judge, you had mentioned earlier about the FCR and whether there was a scope of representation that included in personam claims. And under Taylor, the minimum requirements are that the party is aligned or the interest in the non-party and the non-party representative are aligned and that the non-party representer understood that this was part of the scope of the representation. And that simply did not seem to be the case here. One, because, number one, those claims weren't even contemplated. And second of all, because of this letter of understanding that seemed to indicate that all of the parties agreed that it was restricted to the race and that. So is your argument that the bankruptcy court was just clearly erroneous in its factual findings? Yes, Your Honor. And we would also argue that that would be the same standard that this Court would be evaluating Judge Rakoff's determinations to. It seemed to me the bankruptcy court didn't really address the issue that Judge Shindlin had asked for a particular type of inquiry with respect to due process. And then they said after you've done that inquiry that you can determine whether or not there was prejudice, which is an argument we haven't really gotten to. But the ---- The bankruptcy court got involved in a sort of abstract discussion of whether there was an important difference between impersonum jurisdiction and in rem jurisdiction. But the term in rem jurisdiction was not being used in the abstract sense of just whether a court obtains jurisdiction in rem or in personam. The issue was whether it was in rem with respect to the re's of the bankruptcy court's jurisdiction. We agree, Your Honor. And the suit could perfectly, a suit against Marsh could perfectly well be a jurisdiction could be obtained by in rem jurisdiction by seizing a bank account in New York or something like that, and that would change nothing. It didn't have to do with whether the suit was in rem or in personam. It had to do with whether the ---- whether it was addressed against the re's of the bankruptcy court. Right. We agree, Your Honor. I'd also like to add ---- oh, I'm sorry. I see my time. May I add one more thing? The Supreme Court essentially acknowledged that the proceedings, impersonam proceedings against other persons that appear to have been covered, that were covered, were beyond the jurisdiction of the bankruptcy court, but that it was too late to raise it. That's right. At the time that it came before the Supreme Court. That's right, Your Honor. It just simply wasn't part of the bankruptcy court proceeding. That's part of the Supreme Court's ruling, is it not? I agree, Your Honor. I'd also like to add that the FCR was limited in the scope of its representation by 11 U.S.C. 1103, which is specifically attributed to claims creditor's committees. And creditor's committees don't have the right to bind individual members of that committee. They're allowed to go in and investigate. But it's all within the jurisdiction of the bankruptcy court. To the extent that these types of actions, which are being asserted as within the jurisdiction of this order, are outside of the bankruptcy court, I'm not really sure how the FCR could appear, could do anything, because 1103 limits it to the bankruptcy court. Thank you, Your Honor. Excuse me. Just briefly, the fact that people back in the, what is it now, the 1980s couldn't dream up particular claims can't possibly mean that the future claims representative can't represent them properly. If that were the case, then the reason is not that the claims couldn't be dreamed up. The reason is that they were beyond the scope of the bankruptcy court's authority, that claims against other people who were not the debtor for their own torts were not part of the bankruptcy court's jurisdiction. It's not that they couldn't be dreamed up. If one has a good imagination, one can dream them up. But the issue is whether they were simply not part of that jurisdiction, not part of the bankruptcy court. You're absolutely right, Your Honor. The reason I said what I did is because of my concern that to the extent that anybody dreams up a new claim 20 or 30 years later that was not specifically contemplated in the bankruptcy court proceeding, then they would say they were denied due process because they didn't have adequate representation. And that would mean that what the future claims representative is doing on behalf of his clients and to get to a confirmation order would mean it's subject to opening up. The argument is that it's a claim that was beyond the scope of the bankruptcy court's concern. That's correct. But the question is, the question we have to decide on due process is whether the And in the fact that he didn't, if it's true even, that he didn't know or he didn't imagine or he didn't believe that the kinds of claims that Mr. Zabagdin Law Firm are bringing now would ever be brought in the future, we don't know that one way or the other. But we can't have a situation where we have a clear and unambiguous injunction. Again, so says the Supreme Court. And 30 years later, somebody argues, well, you didn't think of that. We didn't. The future claims representative didn't think of that claim. And therefore, he couldn't have been representing me, and therefore, I was denied due process. That's the argument, and that simply can't be the rule. We can't function in the bankruptcy courts that way. Essentially, if this case falls within, is analyzed as we did in Chubb, if we don't draw a distinction, we are essentially undoing the holding of the Supreme Court in Bailey, aren't we? We're not giving any effect to the order of the bankruptcy court at the time. That is correct, Your Honor, and that's the problem. The claimant tries to use the — I'm sorry, the appellee tries to use this Court's analysis in Chubb to demonstrate that Mr. Parra, like Chubb, was not represented properly in the bankruptcy court, but that fails. Mr. Parra had a representative in the bankruptcy court. Chubb did not. Mr. Parra had the benefit of a vast notice. Chubb did not. And Mr. Parra's interests were certainly aligned with the future claims representative, and Chubb's interests were not aligned with the future claims representative. In fact, they were antagonistic. So this case just does not fall within the due process analysis of this Court following — following Bailey. Just very, very briefly, Judge Rakoff and appellee rely on Rule 3, the Federal Rules of Appellate Procedure, but that doesn't apply because we're in the bankruptcy court. Rule 8002 applies in terms of the timing with which you have to bring a notice — a notice of appeal in the bankruptcy court. They argue that they — or they say they were unable to reach Mr. Parra's wife. I note that for five years, I guess. But I note that when Judge Rakoff asked them to get affidavits from her, they got them within just a few days. In terms of the engagement letter, if the engagement letter truly gave the Bogdan Law Firm the right to appeal on behalf of the estate, then they would just appeal in Mr. Parra's name. But they didn't do that. They appealed in the name of the Bogdan Law Firm as counsel for Parra. So what are we to make of that? As counsel doesn't not mean, Your Honor, with respect, that that is Mr. Parra appealing, particularly when we have an admission that nobody even spoke to Mr. Parra about taking the appeal, or the estate, for that matter. Are there no further questions? Thank you very much. Thank you both. Well argued.